# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**BRUCE DAVID ANDREW**                          **CIVIL ACTION NO.**
**SAFRANEK, ET AL.**

**VERSUS**

                                                        **20-198-BAJ-EWD**

**NATIONAL GENERAL**
**INSURANCE COMPANY, ET AL.**

## <u>NOTICE</u>

Please take notice that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on February 25, 2021.


**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**BRUCE DAVID ANDREW**                                  **CIVIL ACTION NO.**
**SAFRANEK, ET AL.**

**VERSUS**

                                                        **20-198-BAJ-EWD**

**NATIONAL GENERAL**
**INSURANCE COMPANY, ET AL.**

### MAGISTRATE JUDGE'S
### REPORT AND RECOMMENDATION

Before the Court is the Motion to Remand (the "Motion"), filed by Plaintiffs, Bruce David

Andrew Safranek ("Safranek") and Darci Felder Safranek, individually and on behalf of their

minor children, Evan Riley Safranek and Elise Noel Safranek (collectively, "Plaintiffs").[1] The

Motion is opposed.[2]  As removal was timely, the requirements of the Class Action Fairness Act of

2005 (28 U.S.C. §1711, *et seq.* ("CAFA")), are met, and the CAFA abstention exceptions are

inapplicable, it is recommended[3] that the Motion be denied and this matter be referred for a

scheduling conference.[4]

## I.    Facts and Procedural Background

On February 12, 2018, Plaintiffs filed their original Petition for Damages ("Petition")

against National General Insurance Company ("National General"), Imperial Fire & Casualty

Insurance Company ("Imperial Fire"); USAA Casualty Insurance Company ("USAA"); and

Melvin Green ("Green") (collectively, "Defendants") in the Nineteenth Judicial District Court for

---

[1] R. Doc. 16.
[2] R. Doc. 20.
[3] The Fifth Circuit has held that "a motion to remand is a dispositive matter on which a magistrate judge should enter a recommendation to the district court subject to *de novo* review."  *Davidson v. Georgia-Pacific, L.L.C.*, 819 F.3d 758, 765 (5th Cir. 2016).
[4] A scheduling conference was initially set for May 28, 2020 but was cancelled in light of the pending Motion.  R. Docs. 10, 17.

the Parish of East Baton Rouge, State of Louisiana.[5]  In the Petition, Plaintiffs allege that, on May 25, 2017, Safranek was driving on Burbank Drive in East Baton Rouge Parish, Louisiana when his vehicle was struck by the vehicle owned by Green, and operated by Green or someone authorized by Green, who did not stop but fled the scene (the "Accident").[6]  Plaintiffs contend that the Accident was caused by the negligence of Green or the unknown authorized operator of the car and caused Safranek to suffer personal injuries to his neck, upper back, right shoulder and right arm.  Safranek sought damages for past, present, and future medical expenses, lost wages and loss of earning capacity, mental and physical pain and suffering, residual disability, mental anguish and loss of enjoyment of life.[7]  The other Plaintiffs sought damages for their loss of consortium, services, and society.[8]  Plaintiffs also named as defendants National General and Imperial Fire, Green's liability insurance carriers, and USAA as Plaintiffs' uninsured/underinsured motorist ("UM") carrier.[9]

On January 8, 2019, Plaintiffs emailed USAA.  In that email, Plaintiffs advised that they had reached a settlement with  Imperial Fire and made a demand for the UM policy limits ($50,000 per person).[10]  Plaintiffs entered into a Receipt and Release ("Release") on February 21, 2019,[11] and on May 2, 2019, a "Joint Motion To Dismiss With Prejudice and Reservation of Rights" was filed in state court, seeking dismissal only of Plaintiffs' claims against National General and Imperial Fire. Plaintiffs reserved Plaintiffs' claims against Green "to the extent he has other applicable insurance, it being agreed that Melvin Green should remain a 'nominal defendant' only and will never have any personal liability above other available and collectable liability insurance

---

[5] R. Doc. 1-1, p. 5.
[6] R. Doc. 1-1, pp. 5-6.
[7] R. Doc. 1-1, pp. 5-6.
[8] R. Doc. 1-1, p. 7.
[9] R. Doc. 1-1, p. 7.
[10] R. Doc. 20-1, pp. 3-4; R. Doc. 20, p. 9.
[11] R. Doc. 20-1, pp. 3, 5-6.

coverage."[12] The Motion to Dismiss with Prejudice was granted by the state court on May 15, 2019.[13]

In the interim, Plaintiffs filed four additional petitions. The First through Third Supplemental and Amending Petitions assert claims for statutory bad faith damages against USAA for, *inter-alia,* USAA's failure to tender amounts under Plaintiffs' UM policy, for USAA's assertion of a lien on the settlement proceeds paid to Plaintiffs, and for USAA's misrepresentation of facts and policy provisions regarding "hit-and-run" accidents.[14]  On January 21, 2020, Plaintiffs filed a motion for leave to file their Fourth Supplemental and Amending Petition for Class Certification ("Class Petition"), which asserted class claims pursuant to La. C.C.P. art. 591 based on the allegation that USAA engaged in misinterpretations of the hit-and-run terms of its policies[15] and defined the proposed class as follows:

> …the class is defined objectively as all purchasers of USAA uninsured motor vehicle insurance polices for the last ten years who opened a "hit-and-run" motor vehicle claim which was denied based on USAA's representation that the offending vehicle was not a hit-and-run vehicle.[16]

Likewise, Plaintiffs sought an order certifying the following class in the motion for class certification:

---

[12] R. Doc. 1-9, pp. 140-41 *and see* Release at R. Doc. 20-1, p. 5.

[13] R. Doc. 1-9, p. 141.  Because of the state court dismissal of Imperial Fire and National General, and with no opposition from any party, this Court likewise terminated these defendants from this case. R. Docs. 22-23.  Green is currently a defendant; however, Plaintiffs filed a Motion for Partial Voluntary Dismissal, seeking dismissal of Green, which is currently pending before the District Judge.  R. Doc. 25.

[14] R. Doc. 1-6, pp. 73-79 (First Supplemental Petition, filed October 29, 2018 and prior to the settlement); R. Doc. 1-7, pp. 29-31 (Second Supplemental Petition, filed February 20, 2019); and R. Doc. 1-7, pp. 157-60 (Third Supplemental Petition filed on or about March 27, 2019).

[15] Plaintiffs contend that USAA has improperly denied the UM claims of Plaintiffs and the class because USAA fails to correctly interpret the hit-and-run policy provision at issue.  Plaintiffs contend the provision defines a "hit-and-run motor vehicle" as a vehicle whose **operator or owner** cannot be identified." (Doc. 1-7, pp. 157-158, ¶¶ III-IV)(emphasis and added). However, Plaintiffs contend that USAA asserts that the provisions of its Louisiana policy of UM coverage does not render USAA legally obligated to pay for hit-and-run accidents unless both the **operator and owner** cannot be identified, and thus USAA is not legally obligated to Plaintiffs because Green was identified as the owner of the hit-and-run vehicle.  Doc. 1-7, p. 158, ¶ V.

[16] R. Doc. 1-2, p. 5, ¶ XII.

3

…all persons who purchased a UM Policy with USAA, were involved in a "hit and run accident" over the last ten years, and were denied coverage on USAA's representation that and (sic) uninsured motor vehicle did not include a "hit-and-run" vehicle.[17]

Further, Plaintiffs alleged that USAA misrepresented the hit-and-run terms of its UM policies to "hundreds, if not thousands" of its insureds, along with Plaintiffs. Regarding the size of the class, Plaintiffs cited data indicating that 20,555 hit and run accidents occurred in Louisiana from 2014 through 2018, and USAA had a 5.46% market share of insurance. Thus, Plaintiffs alleged that USAA likely handled 1,122 hit-and-run accidents over that five year period, and likely handled more than 2,000 such accidents over the corresponding ten year period.[18] The state court heard argument on the motion for leave to file the Class Petition and granted it on March 2, 2020.[19]

On April 1, 2020, and in response to the state court's granting of Plaintiffs' motion for leave to file the Class Petition, USAA removed the matter to this Court on the basis of CAFA, 28 U.S.C. § 1332(d) and 28 U.S.C. § 1453.[20]

In the Notice of Removal, USAA alleged that CAFA's 100-member class size requirement was met because the Class Petition alleged USAA "handled 1,122 'hit-and-run' claims in the last five years"…and likely handled more than 2,000" hit-and-run claims over the past ten years;[21] CAFA's minimal diversity requirement was met, as Plaintiffs are Louisiana citizens and USAA, a reciprocal inter-insurance exchange and unincorporated association, is deemed a Texas citizen

---

[17] R. Doc. 1-2, p. 8. *See* R. Doc. 1-2, p. 2, alleging: "Plaintiffs seek to serve as class representatives on behalf of every USAA insured who had uninsured motor vehicle coverage through USAA and was denied coverage in a "hit-and-run" *collision* in the last ten years *in Louisiana* on USAA's representation that 'uninsured motor vehicle' did not include a 'hit-and-run' vehicle and pursue bad faith penalties against USAA for consistent violations of La. R.S. 22:1973(B)(1)…." (emphasis added).
[18] R. Doc. 1-2, pp. 3-4. Claims for breaches of insurance policies are generally subject to a ten year prescriptive period in Louisiana. La. C.C.P. art. 3499.
[19] R. Doc. 1-3, p. 2.
[20] R. Doc. 1.
[21] R. Doc. 1, pp. 2-3, *citing* R. Doc. 1-2, p. 4 and *citing* 28 U.S.C. § 1332(d)(5) ("Paragraphs (2) through (4) shall not apply to any class action in which-- (B) the number of members of all proposed plaintiff classes in the aggregate is less than 100.").

pursuant to 28 U.S.C. 1332(d)(10) due to its Texas place of incorporation and principal place of business;[22] and CAFA's five million dollar amount in controversy was met, as Plaintiffs seek statutory attorney's fees and, "[g]iven Plaintiff's alleged minimum of 1,122 putative class members and USAA CIC's average Uninsured Motorist Coverage payment, there is more than $10,000,000 in controversy (1,122 x $9,960 = $10,741,920)."[23]

On May 1, 2020, Plaintiffs filed the instant Motion, asserting that remand is appropriate on several grounds, including because the removal is untimely and fails to meet the CAFA amount in controversy requirement. Alternatively, Plaintiffs assert that this Court is required to abstain from exercising jurisdiction due to CAFA's "home state" and/or "local controversy" exceptions at 28 U.S.C. § 1332(d)(4), or that this Court should sever and remand Plaintiffs' individual claims.[24]

## II.    Law and Analysis

### A.  Applicable Legal Standards Governing Removals

CAFA gives federal courts jurisdiction over certain class actions, defined in § 1332(d)(1),[25] if the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million.[26] A defendant may remove class actions arising under CAFA

---

[22] R. Doc. 1, p. 3, *citing* 28 U.S.C. § 1332(d)(2) ("The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which--(A) any member of a class of plaintiffs is a citizen of a State different from any defendant…") and 28 U.S.C. § 1332(d)(2)(10) ("For purposes of this subsection and section 1453, an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized.").

[23] R. Doc. 1, pp. 3-4, *citing* R. Doc. 1-2, p. 4 and *citing* 28 U.S.C. § 1332(d)(2).

[24] R. Doc. 16-1, pp. 2, 6, 16-20.

[25] *See Ictech-Bendeck v. Progressive Waste Solutions of LA, Inc.,* 367 F. Supp. 3d 555, 561 (E.D. La. Mar. 14, 2019) ("CAFA defines a 'class action' as 'any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule or judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action. Plaintiff filed his petition as a class action petition pursuant to Louisiana Code of Civil Procedure Article 591 *et seq.* Such actions are class actions for purposes of CAFA.'") Plaintiffs do not dispute that their class action satisfies this requirement.

[26] *Dart Cherokee Basin Operating Co., LLC v. Owens,* 574 U.S. 81, 84-85, 135 S. Ct. 547, 554, 190 L. Ed. 2d 495 (2014) *citing* § 1332(d)(2), (5)(B) and *Standard Fire Ins. Co. v. Knowles,* 568 U.S. 588, 592, 133 S.Ct. 1345, 1348, 185 L.Ed.2d 439 (2013).

pursuant to 28 U.S.C. § 1453.[27]  Subject matter jurisdiction must exist at the time of removal to federal court, based on the facts and allegations contained in the complaint.[28]  While the general removal statute, 28 U.S.C. § 1441, is strictly construed and doubts as to the propriety of removal should be resolved in favor of remand,[29] "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court."[30]  Still, the removing party has the burden of proving CAFA jurisdiction.[31]  Remand is proper if at any time the court lacks subject matter jurisdiction.[32]

The time limits for filing a notice of removal, provided in the removal procedure rules of 28 U.S.C. § 1446(b) (as invoked by § 1453),[33] are as follows:

> (1) The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.
> ...

---

[27] 28 U.S.C. § 1441(a).

[28] *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) ("jurisdictional facts must be judged as of the time the complaint is filed").

[29] *Gasch v. Hartford Acc. & Indem. Co*., 491 F.3d 278, 281-82 (5th Cir. 2007).  "[D]oubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction." *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).  "Because removal raises significant federalism concerns, the removal statute is strictly construed 'and any doubt as to the propriety of removal should be resolved in favor of remand.'"  *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008) (*quoting In re Hot–Hed, Inc.*, 477 F.3d 320, 323 (5th Cir. 2007)).

[30] *Dart Cherokee Basin Operating Co., LLC*, 574 U.S. at 89, *citing Standard Fire Ins. Co.,* 568 U.S. at 595, 133 S.Ct. at 1350 ("'CAFA's primary objective' is to 'ensur[e] 'Federal court consideration of interstate cases of national importance.'' (quoting § 2(b)(2), 119 Stat. 5)); S.Rep. No. 109–14, p. 43 (2005) (CAFA's 'provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

[31] *Garcia v. Koch Oil Co. of Tex. Inc*., 351 F.3d 636, 638 (5th Cir. 2003); *Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). *And see Addison v. Louisiana Regional Landfill Company,* 398 F.Supp.3d 4, 9 (E.D. La. Aug. 9, 2019) ("Generally, "[t]he removing party bears the burden of showing that federal jurisdiction exists and that removal was proper." (citations omitted).

[32] *See* 28 U.S.C. § 1447(c).

[33] *See* 28 U.S.C. § 1453(b): "A class action may be removed to a district court of the United States in accordance with section 1446 (except that the 1-year limitation under section 1446(c)(1) shall not apply), without regard to whether any defendant is a citizen of the State in which the action is brought, except that such action may be removed by any defendant without the consent of all defendants."

> (3) Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

With regard to triggering the 30-day time period from the defendant's receipt of the initial pleading, as provided in § 1446(b)(1), the Fifth Circuit has provided a bright line rule that "the thirty-day removal period under the first paragraph is triggered only where the initial pleading '*affirmatively reveals on its face* that the plaintiff is seeking damages in excess of the minimum jurisdictional amount of the federal court.'"[34]  If a plaintiff wants the 30-day period to run from the defendant's receipt of the initial pleading, a plaintiff should place in that pleading "a specific allegation that damages are in excess of the federal jurisdictional amount."[35]  The initial pleading in this action does not contain a specific allegation that damages are in excess of the federal jurisdictional amount.[36]  Accordingly, the 30-day period for removing the action was not triggered by service of the original Petition, which is not disputed by any party.

---

[34] *Scott v. Office Depot, Inc.,* No. 14-791, 2015 WL 2137458, at *4 (M.D. La. May 7, 2015)*, citing Mumfrey v. CVS Pharmacy, Inc.,* 719 F.3d 392, 399 (5th Cir. 2013) (*quoting Chapman v. Powermatic, Inc.,* 969 F.2d 160, 163 (5th Cir. 1992) (emphasis added by *Mumfrey* )).

[35] *See Elkins v. Bradshaw,* No. 18-1035, 2019 WL 2096126, at *2 (M.D. La. Apr. 24, 2019), *report and recommendation adopted,* No. 18-1035, 2019 WL 2092564 (M.D. La. May 13, 2019), *citing Chapman,* 969 F.2d at 163 and 2019 WL 2096126 at *2, n. 12: ("Such a statement would provide notice to defendants that the removal clock had been triggered, but would not run afoul of state laws, such as Louisiana, that prohibit pleading unliquidated damage amounts. *See* La. C.C.P. art. 893. In *Bosky v. Kroger Texas, LP*, 288 F.3d 208, 210 (5th Cir. 2002), the Fifth Circuit addressed *Chapman* and suggested, in dicta, that specific damage estimates in the initial pleading that are less than the minimum jurisdictional amount can be combined with other unspecified damage claims to trigger the time limit for filing the notice of removal. In *Mumfrey*, a subsequent panel criticized this portion of *Bosky*, questioned the authority upon which it relied, and noted that if there is a conflict between *Chapman* and *Bosky*, *Chapman* controls the earlier opinion. *Mumfrey*, 719 F.3d at 400 (characterizing this portion of *Bosky* as 'a line that has become the source of significant confusion'). *See Clark v. Dolgencorp*, No. 13-2336, 2014 WL 458220, *3 (W.D. La. Feb. 4, 2014) ('*Mumfrey* expressly rejected the dicta in *Bosky* that was the cause of confusion and instead reiterated that the 'bright line' rule' set forth in *Chapman* applies').").

[36] Plaintiffs' allegations concerning Safranek's damages are generic, and there are no facts regarding the other Plaintiffs' alleged injuries. *See* R. Doc. 1-1, pp. 6-7. The Petition also does not contain an allegation that the federal jurisdictional amount is met. It is not facially apparent from the Petition that the amount in controversy is met.

With regard to triggering the 30-day time period from the defendant's receipt "of an amended pleading, motion, order, or other paper," as provided in § 1446(b)(3), the Fifth Circuit has provided that the 30-day removal period is triggered only where jurisdiction is "unequivocally clear and certain" from the document.[37]    Courts have found that the standard for triggering removal based upon a subsequent "amended pleading, motion, order, or other paper" as provided in § 1446(b)(3) is at least as strict as the standard for triggering the 30-day period for removal based on an initial pleading, as provided in § 1446(b)(1).[38]

**B.  The Notice of Removal is Timely**

1.  <u>The January 8, 2019 Email Did Not Trigger the Removal Clock</u>

It is undisputed that Plaintiffs and Green are all citizens of Louisiana, and the initial Petition did not give rise to federal subject matter jurisdiction under 28 U.S.C. § 1332 (or § 1331).  Plaintiffs argue that the removal clock began to run on January 8, 2019 because on that date, Plaintiffs sent an email to defense counsel indicating that they settled their claims against all parties, except USAA.  Plaintiffs argue that Green was a nominal defendant at that point, such that his citizenship

---

[37] *See Scott,* 2015 WL 2137458, at *4, *citing Bosky,* 288 F.3d at 211 (stating that the statutory term "ascertained" means "unequivocally clear and certain").

[38] *See Scott,* 2015 WL 2137458, at *4, n. 2 ("In *Bosky,* the court indicated that the standard to trigger the second 30 day removal period (as is at issue in the instant case) 'seems to require a *greater* level of certainty' than the *Chapman* standard used to determine whether a case must be removed based on the allegations contained in the initial pleading. *Id.* at 211 (emphasis added). The Fifth Circuit has subsequently held that *Bosky's* discussion of the standards for triggering the initial 30-day removal period constituted dicta because the issue before the *Bosky* court was whether removal was timely pursuant to the language of what is now § 1446(b)(3), and not whether removal was timely pursuant to the language of what is now § 1446(b)(1). *See Mumfrey,* 719 F.3d at 399 n. 11 *(citing Bosky,* 288 F.3d at 209–11). The *Mumfrey* court criticized the *Bosky* decision to the extent it stated that the bright line rule announced in *Chapman* was less strict than the requirement for triggering the 30-day period with regard to amended pleadings and other documents. *Id.* at 400. While the *Mumfrey* court does not use the 'unequivocally clear and certain' language found in *Bosky,* its ultimate holding that the 30-day removal period was triggered by receipt of an amended petition seeking $3,575,000 in damages and not the initial petition, which did not specifically request any amount of damages, suggests that the standards for triggering the 30-day period are virtually identical (if not in fact identical) if removal is based upon the initial pleading or a subsequent paper. *See Smith v. Wal–Mart Louisiana, LLC,* No. 13–2368, 2013 WL 4781778, at *3 (W.D. La. Sept. 5, 2013) (*Bosky* should be read as imposing a trigger for the second removal period that is *at least* as strict as that set forth in *Chapman.*').").

could be ignored,[39] because through their voluntary action, he was no longer a real party in interest.[40]

In response, USAA contends that, while correspondence from opposing counsel may be considered as § 1446(b)(3) "other paper," counsel's January 8, 2019 email (reproduced *below*) failed to start the removal clock because the email did not contain facts that were "unequivocally clear and certain" supporting removal. The email states:

> As of this afternoon, the underlying insurer, Imperial, has agreed to pay its minimal policy limits, property damage, plus interest, and court costs in this case. This is another formal demand to USAA CIC for a tender of the UM limits.[41]

USAA argues that the email is silent regarding Green, does not provide any information conveying that Plaintiffs had settled all of their claims against Green, "[nor] does the email provide any information from which it could be ascertained that Mr. Green would be a 'nominal defendant' moving forward."[42]

The parties correctly state that "other paper" can consist of correspondence between counsel.[43] However, it cannot be realistically argued, as Plaintiff's attempt to do, that the January

---

[39] R. Doc. 16-1, p. 7, *citing* R. Doc. 1-7, p. 29, ¶ II (the February 20, 2019 Second Supplemental Petition alleging: "On January 8, 2019 Plaintiffs and Imperial agreed to a settlement and compromise agreement for the available minimal automobile underlying policy limits in exchange for a full release of Imperial and a release of personal liability as to Melvin Green.").

[40] R. Doc. 16-1, p. 7, *citing Drawhorn-Davis v. State Farm Automobile Insurance Company,* No. 19-496, 2020 WL 1430489, at *4 (M.D. La. Mar. 9, 2020), *report and recommendation adopted sub nom., Drawhorn-Davis v. USAA General Indemnity Company,* No. 19-496, 2020 WL 1433539 (M.D. La. Mar. 23, 2020), *citing Jones v. Travelers Indemnity Co.,* No. 18-946, 2018 WL 6684584, at *3 (E.D. La. Dec. 19, 2018) ("The plaintiff's voluntary action in terminating his claims against [non-diverse defendant] through the settlement agreement renders him no longer a party to the case.").

[41] R. Doc. 20, p. 19, *citing* R. Doc. 20-1, p. 4.

[42] R. Doc. 20, p. 20, *citing Howell v. State Farm Mutual Automobile Insurance Company,* No. 17-2069, 2017 WL 1506053, at *4 (E.D. La. Apr. 27, 2017) ("written notice of settlement did not put Defendant on notice that the case had become removable" since "[s]ettlement agreements are often nuanced, and do not necessarily resolve all the claims against a particular party"); *Drago v. Sykes,* No. 13-563, 2013 WL 3804834, at *5 (E.D. La. July 19, 2013).

[43] *See Jamison v. Kerr-McGee Corp.,* 151 F. Supp. 2d 742, 745 (S.D. Miss. 2001) ("'Other paper' for the purposes of § 1446(b) may include correspondence between the parties and their counsel or between counsel for the parties. *Addo v. Globe Life & Acc. Ins. Co.,* 230 F.3d 759, 761 (5th Cir. 2000).").

8, 2019 email conveyed a "voluntary elimination of all claims against all Defendants except USAA." The email only references settlement with Imperial and thus does not contain facts that were "unequivocally clear and certain" that Plaintiffs had unconditionally settled all claims against the non-diverse Green such that the case was removable.[44] The email contains no details establishing that an enforceable settlement agreement existed against Green involving a voluntary dismissal of all claims against him.[45] Moreover, Green was not dismissed by Plaintiffs in state court at the time Plaintiffs voluntarily dismissed all claims against Imperial and National General, and indeed, Green remains a defendant in this proceeding.[46] The January 8, 2019 email does not qualify as §1446(b)(3) "other paper" which started the removal clock because it is not unequivocally clear and certain.[47] [48]

---

[44] *See Drago,* 2013 WL 3804834, at *5 ("Here, plaintiff stated in his responses to interrogatories … that he had 'settled with tortfeasor's insurer, Geico …, for policy limits of $30,000.00.' This response does not provide 'unequivocally clear and certain' notice that the case had become removable. It does not state that Sykes (the only non-diverse defendant) had been dismissed. In fact, she had not been dismissed.").

[45] *Drawhorn-Davis,* 2020 WL 1430489, is distinguishable. In that case, there were facts establishing the existence of a complete release of the plaintiff's claims against the non-diverse defendant prior to removal that were made known to the removing defendant. The case does not indicate whether plaintiff reserved any rights against the non-diverse defendant like Plaintiffs have in this case against Green. Moreover, the case also does not consider the timing of removal under 28 U.S.C. § 1446.

[46] R. Doc. 1-9, pp. 140-41. As mentioned, Plaintiffs' Motion for Voluntary Dismissal of Green remains pending. R. Doc. 25.

[47] It is not clear that the case would have been removable based solely on the settlement because of the citizenship of USAA. In its corporate disclosure statement in this case, USAA contends that it is a "Texas Corporation," whose parent company USAA is a reciprocal insurance exchange, an unincorporated association. R. Doc. 3. However, the exact same entity, "USAA Casualty Insurance Company," has been previously found to be, for the purposes of diversity jurisdiction, a reciprocal insurance exchange and an unincorporated association with members who are citizens of every state, based upon evidence it has introduced in those proceedings to defeat diversity jurisdiction. *See Cimino v. Sirois,* No. 14-1925, 2014 WL 5393512, at *1 (E.D. La. Oct. 22, 2014) ("Because USAA ["USAA Casualty Insurance Company" is named in the ruling] has members domiciled in Louisiana, USAA is a citizen of Louisiana. To support these claims, defendants have introduced an affidavit from USAA's litigation manager stating that USAA is an unincorporated association with members in Louisiana. Rec. Doc. 6–3. In addition, defendants point out that other divisions have previously dismissed actions against USAA based upon lack of complete diversity because its members reside in all fifty states. *Ourso v. United Services Auto. Ass'n*, 2007 WL 275902, *2 (E.D. La. 1/25/2007) ("USAA is a reciprocal interinsurance exchange with members in Louisiana."); *Norton v. Gurley*, 2000 WL 1408168 (E.D. La. 9/25/2000) ("USAA has members residing in all fifty states."); *Isidore v. USAA Ins. Co.*, 2009 WL 1564807 (La. E.D.6/2/09) ("USAA is an interinsurance exchange ... with members residing in all fifty states").") *Cf.* the affidavit of Leigh Creasman ("Creasman"), USAA's auto examiner, who avers that USAA is a "an inter-insurance exchange *corporation* organized under the laws of the state of Texas with its principal place of business in San Antonio, Texas." R. Doc. 20-2, p. 3 (emphasis added).

[48] Plaintiffs do not argue that their February 21, 2019 Release triggered the removal clock and do not rely on it in support of their argument that the January 8, 2019 email triggered the clock. As such, the Court need not address

2.  <u>Plaintiffs' Motion for Leave to File the Class Petition Did Not Trigger the Removal Clock</u>

Alternatively, Plaintiffs argue that USAA was on notice that the case was removable under CAFA based on the January 21, 2020 filing of Plaintiffs' motion for leave to file their Class Petition, proposed Class Petition, motion to certify a class action, and motion to enroll in the state court.[49] Plaintiffs contend that the motion for leave and proposed Class Petition unambiguously asserted newly-raised class action claims and were amended pleadings and motions contemplated by §1446(b)(3) from which USAA should have ascertained that the case was removable. According to Plaintiffs, "Congress did not limit or qualify 'motion' in any way. … In other words, the text of §1446(b)(3) evinces congressional intent not to make the formal granting of relief on a motion a prerequisite to removal,"[50] so that if this Court does not find that Plaintiffs' pleadings started the removal period, "it would nullify Congress's inclusion of the terms 'motion' and 'other paper.'"[51]  As it was "unequivocally clear and certain" from these pleadings that the case was removable on January 21, 2020, which triggered the removal clock, USAA's deadline to remove expired on February 20, 2020.

In response, USAA avers that, "[w]hile the Fifth Circuit has not precisely addressed this issue, 'a majority of the courts that have confronted the issue in the context of a motion to amend a complaint have held that a proposed amended complaint cannot serve as the basis for removal

---

USAA's arguments regarding the Release.  Even if the Release were considered, it is somewhat ambiguous. In one portion, it states that it is "in …release…of all claims…against Green…," but then reserves Plaintiffs' rights against Green, and specifically releases Green only "to the extent of other available liability insurance….from any liability over and above his available liability insurance."  As such, the analysis of *Goodman v. Nationwide Agribusiness Insurance Company*, No. 19-229, 2019 WL 5791452 (M.D. La. Oct. 21, 2019) appears to apply (arguable ambiguity in the release of claims against a purported nominal defendant strengthens the conclusion that his citizenship should be considered for purposes of determining the existence of federal subject matter jurisdiction).  Plaintiffs also cite to a paragraph in their February 20, 2019 Second Supplemental Petition, which references a release of Green's personal liability (reproduced in footnote *above*), but again, Plaintiffs do not assert that the Second Supplemental Petition triggered the clock.
[49] R. Doc. 1-2.
[50] R. Doc. 16-1, p. 11.
[51] R. Doc. 16-1, p. 12, *citing Hurst v. Nissan North America Inc.*, 511 F. App'x 584, 586 (8th Cir. 2013).

and does not trigger the thirty-day window for filing a notice of removal under § 1446(b).'"[52]

These courts have held that, until the motion for leave is granted, "the complaint [does] not state a

federal claim. It might never state a claim, since the state judge might deny the motion. The

statutory language we quoted [28 U.S.C. § 1446(b)] speaks of a motion or other paper that

discloses that the case is or has become removable, not that it may sometime in the future become

removable, if something happens…."[53]  USAA urges this Court to likewise adopt this view and

find that the removal clock did not start upon the filing of the referenced state court motions.[54]

USAA contends that it timely removed this matter within 30 days of the state court's granting of

Plaintiffs' motion for leave to amend on March 2, 2020.[55]

Plaintiffs have not cited any persuasive authority in support of their argument that the filing

of a motion for leave to file an amended pleading starts §1446(b)(3)'s removal clock.[56]  Based on

---

[52] R. Doc. 20, p. 16, *citing Lion Raisins, Inc. v. Fanucchi*, 788 F. Supp. 2d 1167, 1172-73 (E.D. Cal. 2011).

[53] R. Doc. 20, pp. 16-17, *citing Sullivan v. Conway*, 157 F.3d 1092, 1094 (7th Cir. 1998).

[54] R. Doc. 20, pp. 17-18, *citing Robinson v. N. Bolivar Consolidated School District,* No. 19-26, 2019 WL 3536819, at *2 (N.D. Miss. Aug. 2, 2019) (removal timely based on the date that the jurisdiction-triggering amended complaint was actually filed after the granting of the motion for leave); *Nieto v. Lantana Community Association, Inc.,* No. 19-00239, 2019 WL 3502794, at *6 (E.D. Tex. Aug. 1, 2019) (holding that "it was only after the state court granted Plaintiff's motion for leave to file Plaintiff's supplemental petition—adding Plaintiff's federal due process claim to Plaintiff's petition for the first time—that the case became removable."); *Parker v. Henderson Independent School Dist.,* No. 06-278, 2007 WL 1006941, at *2, n. 1 (E.D. Tex. Mar. 30, 2007) ("Until the court granted their motion for leave to file an amended complaint on May 26, 2006, there was no basis for removal." (*citing Sullivan v. Conway,* 157 F.3d 1092, 1094 (7th Cir. 1998)); *Schoonover v. West American Ins. Co.,* 665 F. Supp. 511, 514 (S.D. Miss. 1987) (holding that the motion to amend did not show that the case had become removable, as required by the plain language of 28 U.S.C. § 1446(b), because the state court retained discretion to deny the leave to amend).

[55] R. Doc. 20, p. 18.  28 U.S.C. §1446(c)(1)'s prohibition on removal of cases that are premised on diversity of citizenship more than 1 year after commencement of the action is inapplicable to CAFA removals, *see* 28 U.S.C. § 1453(b).

[56] The only case Plaintiffs cite, *Hurst v. Nissan North America, Inc*., 511 Fed. App'x 584, 586 (8th Cir. 2013), is not persuasive.  There, the case was removed after the plaintiffs newly asserted punitive damages claims in their jury instructions on the eve of trial, which the defendant contended satisfied CAFA's amount in controversy requirement. However, the plaintiffs could only demand punitive damages in their petition pursuant to Missouri law, and had not amended to assert them, or sought leave to amend, prior to removal.  The removing defendant also argued that the inclusion of the terms "motion" and "other paper" in §1446(b)(3) evinced congressional intent not to make formal amendments a prerequisite to removal, and that to hold otherwise, would effectively write the term "other paper" out of the statute.  However, the *Hurst* court did not adopt this argument, because "§1446 merely sets forth the procedural requirements for removal to federal court; it does not inform the substantive question of whether the action is removable in the first place." The removing defendant failed to prove the case was removable under CAFA in the first place because it was legally impossible for the class to recover more than the $5,000,000 minimum jurisdictional amount.  *Id*. at 586.

the language of § 1446, the better reasoned opinions are those cited by USAA, *i.e., Robinson*, *Nieto*, and *Parker*, holding that it is the granting of a motion for leave to amend that starts the removal clock, particularly in a federal question case.  Prior to the granting of a motion for leave to amend to newly assert a federal question, such as the case herein, there is no federal question asserted in the state court proceedings that renders the case removable.[57]  Accordingly, the removal clock did not start running upon Plaintiffs' state court motion for leave to amend the Class Petition, motion to certify a class action, or motion to enroll counsel.

---

[57] Despite Plaintiffs' argument that the state court motions referenced were §1446(b)(3) "motions" or "other paper," because it was clear that Plaintiffs were adding a federal claim, there is authority suggesting the contrary. *See Nieto:* 2019 WL 3502794, at **5–6: ("Generally, when courts look to 'other paper' to ascertain removability, courts are clarifying that *diversity* jurisdiction has been established.' *Amrhein v. Prosperity Bank*, 4:18-CV-18, 2018 WL 2392800, at *4 (E.D. Tex. May 25, 2018) (emphasis added). In these diversity cases, a plaintiff will typically bring a state-law claim against a diverse party in state court, but will not allege an amount in controversy in the complaint. *Eggert v. Britton*, 223 F. App'x. 394, 397 (5th Cir. 2007). Then, some 'other paper' will enable the defendant to ascertain the amount in controversy, establishing federal diversity jurisdiction under 28 U.S.C. § 1332. *Id.* (citing *Addo v. Globe Life & Accident Ins. Co.*, 230 F.3d 759, 761 (5th Cir. 2000); *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir. 1996); *Huffman v. Saul Holdings Ltd. P'ship*, 194 F.3d 1072, 1078 (10th Cir. 1999)). In these cases, the other paper provides new information—not contained in the complaint—that enables the defendant to ascertain that the case is one which is or has become removable under § 1446(b)(3). When the defendant receives this other paper, the 30-day removal clock begins. *See Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 398 (5th Cir. 2013) (citation omitted).

Due to the well-pleaded complaint rule, the § 1446(b)(3) analysis is different when courts look to 'other paper' to clarify whether *federal question* jurisdiction has been established. As stated previously, the well-pleaded complaint rule 'provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.' *Caterpillar Inc.*, 482 U.S. at 392. Therefore, other paper providing new information—not contained in the complaint—cannot enable a defendant to ascertain that the case is one which is or has become removable for the purposes of establishing federal question jurisdiction under § 1331, because the new information is not found on the face of the plaintiff's well-pleaded complaint. [*citations omitted*]  In other words, 'other paper' cannot inject a federal question into the well-pleaded complaint, it can only clarify that a federal question already exists in the plaintiff's well-pleaded complaint. *See Eggert*, 223 F. App'x. at 397–98 (quoting *Trotter*, 47 F. Supp. 2d at 793). As found above, Plaintiff's Original Petition did not present a federal question. Therefore, Plaintiff could not inject a federal question into the Original Petition through the 'motions' and 'other papers' at issue, including Plaintiff's partial motion for summary judgment; Plaintiff's motion for leave to supplement petition; and Plaintiff's motion for continuance, objections and response to Defendant's motion for summary judgment.  Instead, it was only after the state court granted Plaintiff's motion for leave to file Plaintiff's supplemental petition—adding Plaintiff's federal due process claim to Plaintiff's petition for the first time—that the case became removable.").

As the Notice of Removal was filed on April 1, 2020, thirty days after the state court's March 2, 2020 oral order granting Plaintiffs leave to amend to assert a federal question, the removal was timely.[58]

### C. USAA Has Sufficiently Established the Requirements of CAFA

Plaintiffs next argue that, in order for USAA to satisfy its burden to show that CAFA's five million dollar minimum amount in controversy requirement is met, USAA "may follow either of two tracks: (1) adduce summary judgment evidence of the amount in controversy, or (2) demonstrate that, from the Class Plaintiffs' pleadings alone, it is 'facially apparent' that CAFA's amount in controversy is met."[59] Further, Plaintiffs aver: "[t]he removing party's burden is to show not only what the stakes of the litigation *could be*, but also what they *are* given the plaintiff's actual demands."[60] Plaintiffs contend that USAA has not established that the claims at issue will meet the jurisdictional threshold because (1) USAA has overstated the size of the putative class and/or (2) USAA has overstated the average value of the class claims.[61]

USAA characterizes its burden as providing a "notice of removal [that] need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," and once the defendant "has explained plausibly how the stakes exceed $5 million, then the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much."[62] If

---

[58] According to the minutes of the state court proceeding, the Motion for Leave to Amend was granted orally on March 2, 2020. R. Doc. 1-3, p. 2. It does not appear that the written order is in the record (which is voluminous), but the written order would have necessarily post-dated the oral March 2, 2020 order. Even if the oral order triggered the removal clock, the removal was timely.

[59] *Hood v. Water Treatment and Controls Company,* No. 16-235, 2016 WL 6901373, at *3 (M.D. La. Sept. 23, 2016), *report and recommendation adopted,* No. 16-255, 2016 WL 6900796 (M.D. La. Nov. 22, 2016), *citing Berniard v. Dow Chemical Co.*, 481 Fed.Appx. 859, 862 (5th Cir. 2010) (*citing De Aguilar v. Boeing Co.*, 11 F.3d 55 (5th Cir. 1993); *Simon v. Wal-Mart Stores, Inc.*, 193 F.3d 848, 850 (5th Cir. 1999)).

[60] *Hood,* 2016 WL 6901373, at *3, *citing Berniard.*, 481 Fed.Appx. at 862 (*quoting Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008)).

[61] R. Doc. 13.

[62] R. Doc. 20, p. 19, *citing Dart Cherokee Basin Operating Co., LLC,* 574 U.S. at 89, and *Rowell v. Shell Chem. LP*, No. 14-2392, 2015WL 3505118, at *2 (E.D. La. June 3, 2015).

the plaintiff challenges the defendant's evidence, then the court decides if the amount in controversy is met by a preponderance of the evidence. USAA agrees that it can meet its burden by showing that the amount in controversy is facially apparent from the pleadings or by adducing summary judgment-type evidence, and further contends it is not required to prove the jurisdictional amount to a legal certainty.[63]  Rather, USAA says that it is only required to show that the asserted claims "more likely than not" meet the threshold.[64]  USAA further argues that the presumption against removal jurisdiction does not apply in cases invoking CAFA.[65]

    1.  <u>USAA Has Sustained Its Burden of Showing That the CAFA Class Size Is Met</u>

With respect to the size of the class, Plaintiffs argue that USAA improperly relied on its own definition of the potential class rather than Plaintiffs' definition of the class. Plaintiffs defined the class as involving: "'hit-and-run collision[s] in Louisiana" in relation to which USAA made misrepresentations to its "Louisiana insureds."[66]  Plaintiffs contend that they used the total number of Louisiana hit-and-run claims and USAA's general market share in order to get a "generalized starting point for a calculation of the number of existing Class Plaintiffs."[67]  Plaintiffs argue that they "speculat[ed] that, in total" USAA may have handled more than 2,000 hit-and-run claims over the last ten years, but their Class Petition and motion to certify the class establish that the proposed class is only the subset of the total hit-and-run claims, i.e., only those Louisiana insureds for which USAA improperly denied UM coverage based upon its definition of "hit-and-run"

---

[63] R. Doc. 20, p. 19, *citing Robertson v. Exxon Mobil Corp.*, 814 F.3d 236, 240 (5th Cir. 2015).

[64] R. Doc. 20, p. 20, *citing Nolan v. Exxon Mobil Corp.*, No. 13-439, 2013 WL 6194621, at *2 (M.D. La. Nov. 26, 2013).

[65] R. Doc. 20, *citing Dart Cherokee Basin Operating Co.,* 574 U.S. at 89 (noting Congress intended CAFA to be interpreted expansively).

[66] R. Doc. 16-1, p. 13, *citing* R. Doc. 1-2, pp. 2-4, ¶¶ I, VIII, X.

[67] *See* R. Doc. 1-2, p. 4, using data from the "LSU.EDU Highway Safety Research Group" reflecting 20,555 total hit-and-run crashes from 2014 to 2018 in Louisiana multiplied by USAA purported market share of 5.46% for an estimated 1,122 hit-and-run accidents handled by USAA in Louisiana, and then using that figure to argue that USAA may have handled more than 2,000 Louisiana hit-and-run claims over a ten year period.

accidents. Any other hit-and-run claims denied on other grounds, such as prescription or adequate proof of loss, would be excluded from the class. Plaintiffs argue that, rather than produce summary judgment evidence showing "a less nebulous estimate of the class," *i.e.*, the actual number of hit-and-run claims it may have denied based upon its definition of a hit-and-run vehicle, USAA instead used Plaintiffs' aggregate estimate of total hit-and-run claims to support its allegation that are "over 2,000 persons in the putative class," with a "minimum of 1,122 putative class members."[68] Furthermore, Plaintiffs argue that even if USAA had provided the actual hit-and-run data, the class would still be a smaller subset of that group as per Plaintiffs' limitation of the class to Louisiana insureds.[69]

USAA responds that it could not determine the actual number of claims over the last ten years where it may have denied or delayed payment of UM benefits based on its definition of a hit-and-run vehicle without conducting a case by case review, and it is not required to conduct such a review to sustain its burden to show that the CAFA amount in controversy is met. Rather, USAA was entitled to rely on the allegations in Plaintiffs' Class Petition.[70] USAA contends that, in the Class Petition, Plaintiffs allege that the putative class consisted of "hundreds, if not thousands" of USAA policyholders based on the number of hit-and-run claims Plaintiffs claim USAA handed in Louisiana over the past decade, and USAA reasonably estimated a potential class size of anywhere from 1,122 to 2,000 persons in the Notice of Removal.[71]

---

[68] R. Doc. 16-1, p. 14, *citing* R. Doc. 1, ¶¶ 9, 17-18.

[69] R. Doc. 16-1, p. 14.

[70] R. Doc. 20, pp. 13-14, *citing See Brew v. Univ. Healthcare System, LC*, No. 15-4569, 2015 WL 8259583, at *3 (E.D. La. Dec. 9, 2015) ("[F]or purposes of determining the jurisdictional requirements under CAFA, the scope of the class must not require resolution of the merits of each member's claim.") (other citations omitted).

[71] R. Doc. 20, p. 21.

The putative class size was facially apparent from the Class Petition, upon which USAA was entitled to rely.[72]  Plaintiffs' Class Petition specifically states that Plaintiffs calculated the class size, specifically based upon data showing hit-and-run crashes in Louisiana multiplied by Plaintiffs' belief that USAA had a 5.64% market share, to be anywhere from a minimum of 1,122 members to 2,000 members.  Plaintiffs also specifically alleged that "hundreds if not thousands" of policyholders were improperly denied UM claims based on USAA's interpretation of hit-and-run vehicles.[73]  While Plaintiffs did not attribute the "hundreds, if not thousands," estimation to its purported subset of hit-and-run accidents in *Louisiana,* neither the Class Petition nor the motion to certify the class limits the class to Louisiana insureds.[74]  In any case, USAA was not required to adduce any further evidence to sustain its burden of proving that the CAFA class size requirement was met (although it has come forward with additional evidence, as detailed below).

   2.   <u>USAA Has Sustained Its Burden of Showing That the CAFA Amount in Controversy is Met</u>

With respect to the claims of the Class, Plaintiffs allege that USAA overstated the Class claim value by using the $5,000 "maximum" statutory penalty allowed per La. R.S. 22:1973,[75]

---

[72] *See In re Whole Foods Mkt., Inc., Greek Yogurt Mktg. and Sales Practices Litigation*, No. 14-1135-SS, 2015 WL 5737692, at *9 (W.D. Tex. Sept. 30, 2015) (holding that removing defendant did not need to introduce affidavits as to the class size because the plaintiffs' complaints alleged class sizes in the "thousands" or "tens of thousands.").  *See also Preston v. Tenet Health System Mem'l Med. Ctr., Inc.,* 485 F.3d 804, 821 (5th Cir. 2007) (rejecting the argument that the exact class size was required to be known for the purpose of evaluating whether a CAFA exception applied and holding: "At this preliminary stage, it is unnecessary for the district court to permit exhaustive discovery capable of determining the exact class size to an empirical certainty. Even though a party should take care in defining the putative class, the specificity argued for by LifeCare more appropriately occurs during class certification."). This Report is not to be construed as providing any opinion as to the sufficiency of Plaintiffs' definition of the potential class.

[73] R. Doc. 1-2, p. 3, ¶ IV.

[74] *See* R. Doc. 1-2, p. 2 (Class Petition limiting the class to *collisions* occurring in Louisiana); R. Doc. 1-2, p. 5 (Class Petition "objectively" defining the class but with no Louisiana limitation); and R. Doc. 1-2, p. 8 (Motion to Certify containing no Louisiana limitations). *See also* Plaintiffs' settlement demand referencing "a potential nationwide claim."  R. Doc. 20-1, p. 9. Even so, USAA does not appear to contest that the putative class is limited to Louisiana insureds. *See* R. Doc. 20, p. 17, *citing* R. Doc. 20-2, p. 3 (providing UM claim data for payouts to Louisiana insureds over the relevant time period in support of the amount in controversy).

[75] La. R.S. § 22:1973(C) provides, in pertinent part: "In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater…."

multiplied by the size of the entire estimated Class, 2000 members. Plaintiffs argue that this approach is unreasonable because it treats the claims of each plaintiff identically, but the individual claims are not subject to generalization.[76]  Plaintiffs also argue that USAA's other approach, multiplication of the 1,122 minimum class size times USAA's $9,960 average UM payment during the relevant time period, is also flawed because it excludes insureds who ultimately received a payment but are entitled to a penalty and because USAA does not specify the type of claims upon which the $9,960 average UM claim payment is based, *i.e.*, nationwide UM claims, Louisiana UM claims, *etc*.[77]

USAA responds that it is facially apparent from the pleadings that the CAFA amount in controversy is met considering only Plaintiffs' demand for statutory penalties of $5,000 times the 1,122 minimum class size, which equals $5,610,000.[78]  According to USAA, this calculation is not based on the maximum statutory penalty because La. R.S. 22:1973 provides for application of $5,000 or two times the damages sustained, *whichever is greater*.[79]  Moreover, USAA contends that Plaintiffs submitted a settlement demand on June 5, 2019 (prior to the filing of the class claims and the removal), which is valuable evidence of the amount in controversy.[80]  Therein, Plaintiffs estimated the claim value of the putative class over only a five year period (using the same hit-and-run data from 2014 to 2018, a projected 2019 number of 4,245 accidents, and the 5.46%

---

[76] R. Doc. 16-1, p. 15, *citing* R. Doc. 1, ¶¶ 16-17, resulting in an amount in controversy of ten million dollars.

[77] R. Doc. 16-1, p. 15, *citing* R. Doc. 1, ¶ 19, resulting in an amount in controversy of $10,741,920 and *citing Berniard*, 481 Fed.Appx. at 863-64 and *Cannon v. Dow Chemical Company*, No. 08-1397, 2008 WL 2308897, at *2 (E.D. La. June 2, 2008).

[78] USAA clarified that its claims value calculation in the Notice of Removal, which was based on an average UM payment of $9,960, was flawed because it inadvertently accounted for payments made for property damage liability. R. Doc. 20, p. 24, n. 3.

[79] R. Doc. 20, p. 21, *citing Lewis v. Auto Club Family Ins. Co.*, No. 11-169-DM2, 2011 WL 3444312, *5 (M.D. La. July 7, 2011); La. Stat. Ann. § 22:1973(C) (emphasis added) and *Manshack v. Ocwen Loan Servicing, LLC*, Nos. 13-cv-3231, 14-cv-0759, 2014 WL 5500456, *4 (W.D. La. Oct. 29, 2014) ("[F]ederal courts have concluded that the $5,000 minimum penalty is the highest amount the court can attribute to the claim for penalties when assessing the amount in controversy.")

[80] R. Doc. 20, p. 22, *citing Carver v. Wal-Mart Stores, Inc.*, No. 08-42, 2008 WL 2050987 (M.D. La. May 13, 2008).

market share alleged in the Class Petition) to be $6.7 million in penalties.[81] To reach that figure, Plaintiffs applied what Plaintiffs characterized as the "minimal" $5,000 statutory penalty to an estimated class size of 1,354.[82] USAA contends that Plaintiffs' estimated class claims of $6.7 million for statutory penalties on behalf of a class size of 1,354 over only 5 years establishes that the amount in controversy is met.

Notwithstanding the foregoing, USAA contends that even if the class size consists of only 200 members,[83] the amount in controversy would still be met based on estimated contractual damages of $6,420.168 (compromised of a newly-proffered average UM policy bodily injury payment of $32,100.84 paid to 1,351 Louisiana insureds from 2010 to the present);[84] statutory penalties of $1,000,000;[85] and statutory attorney's fees[86] of $1,855,042 (using the "benchmark" of 25% of the class fund),[87] for a total amount in controversy of $9,275,210.[88]

---

[81] Plaintiffs demanded $379,469.22 to settle their individual claims, which consists of the $50,000 policy limits, penalties to all four Plaintiffs, attorney's fees, interest, and $50,000 to avoid a class action. R. Doc. 20-1, p. 3, ¶ 5, referencing *id.* at p. 10.

[82] R. Doc. 20-1, p. 9.

[83] USAA avers that 200 is the "lowest end alleged in the Class Petition" (R. Doc. 20, p. 23); however, the Class Petition does not explicitly reference a class size of 200, although it does reference "hundreds, if not thousands" of its insureds.

[84] $32,100.84 x 200 members. R. Doc. 20, p. 24 *and see* Creasman Affidavit at R. Doc. 20-2, p. 3 (verifying that, based on USAA's historical data, USAA paid out 1,351 UM bodily injury payments under Louisiana policies between March 1, 2010 to April 30, 2020 totaling $43,368,239.51, which yields an average of $32,100.84 per UM bodily injury payment).

[85] La. R.S. § 22:1973(C) statutory penalties of $5,000 x 200 members, which are subject to consideration in the determination of the amount in controversy. R. Doc. 20, p. 25, *citing St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) *and citing* Plaintiffs' Class Petition at R. Doc. 1-2, ¶ VI. *See also* ¶¶ I, VI.

[86] USAA avers that Plaintiffs seek fees pursuant to La. R.S. 22:1892 (incorrectly cited in brief as La. R.S. 22:1982). R. Doc. 20, p. 25. The Supplemental Petitions pray generally for attorney's fees (*see, e.g.* Plaintiffs' Third Supplemental Petition at R. Doc. 1-7, p. 159, prayer for damages) although the Class Petition does not. However, *see* La. C.C. P. art. 595A. ("The court may allow the representative parties their reasonable expenses of litigation, including attorney's fees, when as a result of the class action a fund is made available, or a recovery or compromise is had which is beneficial, to the class.") and Plaintiffs' settlement demand threatening class claims references attorney's fees under the Insurance Code and explicitly demands attorney's fees on behalf of the named Plaintiffs. R. Doc. 20-1, pp. 9-10.

[87] USAA argues that the benchmark of 25% should be applied to $7,420,168 (comprised of $6,420.168 in contractual damages plus $1,000,000 in statutory penalties) at R. Doc. 20, pp. 25-26, *citing Foret v. Southern Farm Bureau Life Ins. Co.*, 918 F.2d 534, 537 (5th Cir. 1990)(attorney fees may be included in amount in controversy calculation when the substantive law provides for such an award) *and citing Evans v. International Paper Co.*, No. 11-0214, 2011 WL 2559791 (W.D. La. June 28, 2011) (recognizing 25% benchmark)(other citations omitted).

[88] R. Doc. 20, p. 26, *citing Gore v. Fidelity and Deposit Co. of Maryland*, No. 06-2054, 2007 WL 2350259, at *3 (W.D. La. June 6, 2007) ("Adding the amount remaining on the contract, the possibility of 50% of that amount as a

In *Dart Cherokee Basin Operating Co.,* the Supreme Court outlined the procedures and standards for asserting, challenging, and evaluating allegations concerning the amount in controversy for putative class actions removed under CAFA. First, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," and this "allegation should be accepted when not contested by the plaintiff or questioned by the court."[89]  Next, "[i]f the plaintiff contests the defendant's allegation," then "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied."[90]  In *Robertson v. Exxon Mobil Corp.,* the Fifth Circuit acknowledged *Dart Cherokee*'s preponderance of the evidence standard above, and further held that "A removing defendant can meet its burden of demonstrating the amount in controversy by showing that the amount is 'facially apparent' from the plaintiffs' pleadings alone, or by submitting summary-judgment-type evidence."[91]

Plaintiffs have not come forward with any independent evidence of the amount in controversy; rather, they merely attack USAA's submissions.  Setting aside the question of whether it is facially apparent from the pleadings, USAA has come forward with additional, persuasive evidence in support of the amount in controversy; namely, Plaintiffs' June 5, 2019

---

penalty, the penalty on damages under LSA-R.S. § 22:1220, plus an award of reasonable attorneys' fees, together equal an amount in controversy that clearly exceeds the jurisdictional minimum.")

[89] *Carter v. Westlex Corp.,* 643 Fed. App'x 371, 375 (5th Cir. 2016), *citing Dart,* 135 S.Ct. at 553-54; *see also* 28 U.S.C. § 1446(a).

[90] *Carter,* 643 Fed. App'x at 375, *citing Dart,* 135 S.Ct. at 553–54; *see also* 28 U.S.C. § 1446(c)(2)(B) ( "[R]emoval ... is proper on the basis of an amount in controversy asserted [by the defendant] if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds [the jurisdictional threshold].").

[91] 814 F.3d 236, 240 (5th Cir. 2015).  Likewise, post-*Dart*, this Court (and others) has continued to recognize Circuit precedent that a CAFA removing defendant can satisfy its burden of proving the amount in controversy via these two tracks.  *See Hood.,* 2016 WL 6901373, at *3, *citing Berniard v. Dow Chem. Co.*, 481 Fed.Appx. 859, 862 (5th Cir. 2010) (*citing De Aguilar v. Boeing Co.*, 11 F.3d 55 (5th Cir. 1993); *Simon v. Wal-Mart Stores, Inc.*, 193 F.3d 848, 850 (5th Cir. 1999)).  *See also In re Whole Foods Mkt., Inc.* , 2015 WL 5737692, at *6  (rejecting the plaintiffs' argument that the removing defendant could not rely on the face of the petition to prove the amount in controversy and holding: "The Court declines Plaintiffs' invitation to disrupt well-settled circuit precedent based on dicta in *Dart Cherokee*.").

settlement demand[92] reflecting pre-removal estimated class damages of $6.7 million over only a five year period (notably applying $5,000 in statutory penalties),[93] and not including attorney's fees (although Plaintiffs specifically acknowledge that fees are awardable).[94]    Furthermore, although USAA contends that it cannot determine which UM claims were denied on the basis of its construction of the policy's hit-and-run provision without a case by case review, (which USAA is not required to conduct at this stage), USAA has introduced the affidavit of Creasman, wherein Creasman avers that there were 1,351 UM bodily injury claim losses[95] under Louisiana policies over a ten year period totaling $43,368,259.81, which yields an average payout of $32,100.84. That figure applied to a 200 member class results in $6.4 million in controversy.  Although Plaintiff have challenged the figures presented by USAA, they have not introduced any evidence suggesting that USAA's evidence presented an inaccurate picture of the amount in controversy.  USAA has sustained its burden to prove that the CAFA amount in controversy is met.

---

[92] Settlement demands have been recognized as valuable evidence in determining the amount in controversy when reflective of an honest assessment of damages.  *See Carver v. Wal-Mart Stores, Inc.,* No. 08-42-M2, 2008 WL 2050987, at *2 (M.D. La. May 13, 2008), *citing Fairchild v. State Farm Mutual Automobile Ins. Co.*, 907 F.Supp. 969, 971 (M.D. La. 1995)(other citations omitted).

[93] Plaintiffs' use of $5,000 in their own estimate belies Plaintiffs' arguments against the application of it.  Furthermore, *see, e.g., Manshack v. Ocwen Loan Servicing, LLC,* No. 13-3231, 2014 WL 5500456, at *4 (W.D. La. Oct. 29, 2014) (Noting that federal courts have concluded that La. R.S. 22:1973's $5,000 "minimum" penalty is the highest amount the court can attribute to the claim for penalties when assessing the amount in controversy) (citations omitted).  *See also Lewis,* 2011 WL 3444312, at *5 (applying La. R.S. 22:1973's $5,000 penalty per plaintiff to estimate the amount of potential penalties in a CAFA insurance case).

[94] R. Doc. 20-1, p. 9.  *See Gore v. Fidelity and Deposit Co. of Maryland,* No. 06-2054, 2007 WL 2350259, at *2 (W.D. La. June 6, 2007) ("Louisiana law allows recovery for attorney's fees and penalties when an insurer has been arbitrary or capricious in denying a claim. Under these circumstances, the Court is to consider claims for these items when it assesses the amount in controversy. *See, e.g., Poynot v. Hicks,* 2002 U.S. Dist. LEXIS 17272 (E.D.La.2002).").

[95] This figure is remarkably close to Plaintiffs' estimated 1,354 class size in the June 2019 correspondence.

21

### D. The CAFA Abstention Exceptions Are Inapplicable

Alternatively, Plaintiffs argue that the Court must abstain from hearing this case under CAFA's "home state"[96] or "local controversy" exceptions."[97] Plaintiffs bear the burden of proving that either exception applies.[98] If the applicability of an exception is not shown with reasonable certainty, federal jurisdiction should be retained.[99]

Plaintiffs have not met their burden because both exceptions require that either "the principal defendant" or "at least one defendant" is a citizen of the state where the action is filed, in this case, Louisiana. There is only one defendant, USAA. *For CAFA jurisdiction*,[100] USAA's citizenship is based in Texas. In the Notice of Removal,[101] USAA pled that is "a reciprocal inter-insurance exchange organized under the laws of the State of Texas with its principal place of business in San Antonio, Texas."[102] Reciprocal inter-insurance exchanges (and specifically, USAA), have been held in several cases to be unincorporated associations.[103] As such, USAA's

---

[96] R. Doc. 16-1, p. 16.  28 U.S.C. § 1332(d)(4)(B): "A district court shall decline to exercise jurisdiction under paragraph (2)—[over a class action in which]....two-thirds or more of the members of all proposed plaintiff classes in the aggregate, **and the primary defendants, are citizens of the State in which the action was originally filed**.") (emphasis added).

[97] *Id.*  28 U.S.C. § 1332(d)(4)(A): "A district court shall decline to exercise jurisdiction under paragraph (2)--**(A)**(i) over a class action in which--(I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed; (II) **at least 1 defendant is a defendant**--(aa) from whom significant relief is sought by members of the plaintiff class; (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; **and (cc) who is a citizen of the State in which the action was originally filed**; and (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and (ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons." (emphasis added).

[98] *Addison v. Louisiana Regional Landfill Co.*, 398 F. Supp. 3d 4, 9 (E.D. La. Aug. 9, 2019) ("When a party objects to the Court's jurisdiction under CAFA, that party 'must prove that the CAFA exceptions to federal jurisdiction divest[] the district court of subject matter jurisdiction.'")

[99] *Arbuckle Mountain Ranch of Texas, Inc. v. Chesapeake Energy Corp.*, 810 F.3d 335, 338 (5th Cir. 2016).

[100] *See* the prior footnote regarding several cases holding that USAA CIC is a reciprocal inter-insurance exchange who, for the purposes of *diversity jurisdiction*, is an unincorporated association with members of every state and thus not diverse from citizens of the fifty U.S. states.

[101] In USAA's Corporate Disclosure Statement, it alleged that it is a "Texas Corporation" (R. Doc. 3); however, even if USAA is a corporation, USAA's citizenship would still be Texas because of its Texas place of organization and principal place of business.  28 U.S.C. § 1332(c)(1); R. Doc. 1, ¶ 12 *and see* Creasman Affidavit, R. Doc. 20-2, ¶ 2.

[102] R. Doc. 1, ¶ 12.

[103] *See Cimino*, 2014 WL 5393512, at *1 (E.D. La. Oct. 22, 2014) ("Because USAA ["USAA Casualty Insurance Company" is named in the ruling] has members domiciled in Louisiana, USAA is a citizen of Louisiana. To support

citizenship is determined by 28 U.S.C. § 1332(d)(10), which provides that, "For purposes of this subsection and section 1453, an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized," *i.e.*, Texas. Therefore, neither CAFA exception applies because there is no Louisiana defendant.

Plaintiffs' argument in support of the "home state" exception asserts only that the putative class will be exclusively comprised of Louisiana citizens and fails to acknowledge that USAA is not a Louisiana citizen as required for the exception to apply. Furthermore, Plaintiffs' authority is distinguishable, as the dispositive issue in *Hollinger v. Home State Mut. Ins. Co.*,[104] was whether the defendant insurance companies, who challenged CAFA jurisdiction, proved the "two-thirds element" of the CAFA mandatory abstention provisions by a preponderance of the evidence, *i.e.*, whether two thirds of the class were Texas citizens, which is the not at issue herein. The case also noted that the primary defendant insurance companies were also Texas citizens, thereby fulfilling the requirement of a local or home state defendant, which is also distinguishable from the instant matter.[105]

Plaintiffs' argument in support of the "local controversy" exception likewise fails because it merely asserts, without any support, that USAA "may be treated as a citizen of Louisiana" because "it is an insurer admitted to write and deliver policies in Louisiana."[106] The states in which

---

these claims, defendants have introduced an affidavit from USAA's litigation manager stating that USAA is an unincorporated association with members in Louisiana. Rec. Doc. 6–3. In addition, defendants point out that other sections have previously dismissed actions against USAA based upon lack of complete diversity because its members reside in all fifty states.[citations omitted]").

[104] 654 F.3d 564, 571 (5th Cir. 2011).

[105] 654 F.3d at 572. Plaintiffs' reliance on *Caruso v. Allstate Ins. Co.*, 469 F.Supp. 2d 364 (E.D. La. Jan. 8, 2007), a district court, not Fifth Circuit case, is also misplaced. *Caruso* similarly involved a non-diverse local defendant, which is not the case here. *Id.* at 368.

[106] R. Doc. 16-1, p. 19.

USAA is licensed to write and deliver policies have no bearing on its citizenship for CAFA jurisdictional purposes.[107]

Plaintiffs also improperly rely on 28 U.S.C. § 1332(c)(1) to argue that there is no diversity of citizenship in this case because USAA should be deemed a citizen of Louisiana along with Plaintiffs, USAA's insureds.[108] Section 1332(c)(1) provides: "[I]n any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of — (A) every State and foreign state of which the insured is a citizen." However, as USAA points out,[109] this Court has rejected the argument that a plaintiff's claims for UM benefits against its own UM insurer is a direct action under § 1332(c)(1) pursuant to which the UM carrier is deemed a citizen of the same state as its insured:

> Plaintiff erroneously assumes that this matter is considered a direct action because he sued Liberty directly. "[T]he Fifth Circuit has observed that simply because an insurance company is a 'direct' party does not make the litigation a 'direct action.' " *Gonzalez v. Gov't Employees Ins. Group*, Civ. A. No. 99-3707, 2000 WL 235236, at *4 (E.D. La. Feb. 28, 2000) (citing *Evanston Ins. Co. v. JIMCO, Inc.*, 844 F.2d 1185 (5th Cir. 1988) ).
>
> "Because a suit on an uninsured motorist policy does not seek to impose liability on the uninsured motorist carrier for the negligence of its insured, it is not a 'direct action' under § 1332(c)." *Gonzalez*, 2000 WL 235236, at *4. "Courts in this circuit have repeatedly recognized that a first-party UM policy is not considered *liability* insurance for purposes of § 1332(c)(1), and that an insured's suit against his own UM carrier is likewise not a direct action under the statute." *Earl v. Myers*, Civ. A. No. 10-1885, 2010 WL 4875656, at *1 (E.D. La. Nov. 23, 2010) (citing cases). Similar results can be found in this district. "The Louisiana Direct Action statute 'does not apply to actions such as this where an insured seeks recovery under its own ... insurance policy.' " *Barrett v. Comeaux*, Civ. A. No. 13-186-BAJ-RLB,

---

[107] *See* 28 U.S.C. §1332(d)(10) and §1332(c)(1) (defining the citizenship of an unincorporated association and a corporation).
[108] R. Doc. 16-1, p. 16.
[109] R. Doc. 20, pp. 28-30.

2014 WL 68730, at *4 (M.D. La. Jan. 8, 2014) (citing *Hull v. Allstate Ins. Co., Inc.*, 682 F. Supp. 867, 868 (M.D. La. 1988) ).[110]

Adopting the analysis in *Studley* and *Varrecchio*, and applying it to the facts of this case, Plaintiffs' action against USAA is not a direct action under 28 U.S.C. § 1332(c)(1)(A).[111] As explained in *Studley*, it is well-settled in this Circuit that "a first-party UM policy is not considered *liability* insurance for purposes of § 1332(c)(1), and an insured's suit against his own UM carrier is likewise not a direct action under the statute."[112] Because this is not a direct action under 28 U.S.C. § 1332(c)(1)(A), USAA does not assume Plaintiffs' citizenship. Instead, pursuant to either § 1332(d)(10) relating to unincorporated associations, or the provisions of §1332(c)(1) relating to corporations, USAA is deemed a citizen of the state where it was incorporated and has its principal place of business--Texas. Since Plaintiffs are citizens of Louisiana and USAA is a citizen of Texas, USAA has met its burden of proving that the Court has jurisdiction under CAFA (which only requires minimal diversity) and neither the "home state" nor "local controversy" exceptions apply.

---

[110] *Varrecchio v. Moberly,* No. 17-670, 2018 WL 1866613, at *3 (M.D. La. Mar. 29, 2018), *report and recommendation adopted*, No. 17-670, 2018 WL 1865173 (M.D. La. Apr. 18, 2018), *citing Studley v. Head*, No. 16-380, 2016 WL 6304508 (M.D. La. Oct. 3, 2016), **2-3, *report and recommendation adopted*, 2016 WL 6272377 (Oct. 25, 2016).

[111] In *Rayburn v. Colonial Penn Franklin Ins. Co.,* No. 98-3136, 1998 WL 883321 (E.D. La. Dec. 15, 1998), cited by Plaintiffs, the plaintiff sued (what appears to be) his father's own liability and UM carrier, defendant Colonial, to recover UM benefits after an accident. Colonial removed the case, and plaintiff sought remand on the grounds Plaintiffs assert here, *i.e.*, the action was a direct action and Colonial assumed the same citizenship of the plaintiffs pursuant to § 1332(c)(1). Citing Louisiana's Direct Action statute, La. R.S. 22:655(B)(1), the court remanded, holding that Colonial was a liability insurer and the matter was a direct action such that there was no diversity between the parties. *Id*. at **1-2. To the extent Colonial was held to be a liability insurer, the case is distinguishable from the instant matter, which involves USAA as Plaintiffs' UM carrier. As explained above, actions by insureds against their own UM carriers are not considered direct actions by this Court. Moreover, the undersigned disagrees with the decision (1) to the extent the court considered Colonial to be a liability insurer when the plaintiffs sought to recover for UM benefits under the policy, and (2) to the extent the court considered the matter to be a direct action for the purposes of § 1332(c)(1). Other decisions of the Eastern District have likewise repudiated *Rayburn* for these propositions. *See Gonzalez v. Gov't Employees Ins. Grp.,* No. 99-3707, 2000 WL 235236, at *5 (E.D. La. Feb. 28, 2000) ("In light of the overwhelming weight of authority, including caselaw from the Fifth Circuit and at least five courts in this circuit, the Court is not persuaded by *Rayburn's* contrary assertion that § 1332(c)(1) applies to actions against uninsured motorist carriers."); *Poynot v. Hicks*, No. 02-2068, 2002 WL 31040174, at *2 (E.D. La. Sept. 12, 2002) (same).

[112] 2016 WL 6304508, at *3 (*quoting Earl*, 2010 WL 4875656, at *1) (emphasis in original); *See Thomas v. Pace*, No. 08-1574, 2008 WL 4091674 (E.D. La. Aug. 27, 2008); *Gonzalez*, 2000 WL 235236; *See also Evanston Ins. Co. v. Jimco, Inc.*, 844 F.2d 1185, 1188-89 (5th Cir. 1988).

**E.  There Are No Grounds Supporting Severance of Plaintiffs' Claims**

Lastly, Plaintiffs request that, if the Court denies remand, Plaintiffs' non-class claims be severed and remanded from this action.  Plaintiffs argue that "USAA forfeited the ability to remove these pre-existing, unresolved claims when it did not file for removal after the Safranek Plaintiffs settled with the non-diverse co-defendants on January 8, 2019." Further, Plaintiffs contend that severance will not prejudice USAA, because USAA agreed to bifurcation of Plaintiffs' claims when the matter was pending in state court.[113]

In reply, USAA contends that "[w]here CAFA jurisdiction exists, however, a district court retains jurisdiction over all asserted claims. That is so even where class certification is subsequently denied or individual claims are severed from the class claims."[114]  USAA argues that severance and remand of Plaintiffs' claims is not warranted because Plaintiffs' claims, whether asserted individually or as a class, are factually connected as they all relate to USAA's handling of Plaintiffs' UM claim arising out of the Accident.  Finally, "Plaintiffs cite no authority to suggest that factually connected claims brought against the same defendant may be severed and remanded where the entire action has been properly removed under CAFA."[115]

Severance and remand of the individual Plaintiffs' claims is not supported in this case.  The Court has jurisdiction over Plaintiffs' claims, individually and as asserted on behalf of the class, for UM benefits and bad faith penalties and damages pursuant to CAFA, and supplemental jurisdiction over Plaintiffs' related individual claim challenging USAA's lien on the settlement

---

[113] R. Doc. 16-1, pp. 19-20, *citing Williams v. Homeland Insurance Company of New York*,  No. 19-00288, 2019 WL 3526841 (W.D. La. June 4, 2019).
[114] R. Doc. 20, pp. 30-31, *citing Louisiana v. American Nat. Property Cas. Co.*, 746 F.3d 633, 634 (5th Cir. 2014) ("Because at the time of removal CAFA supplied federal subject matter jurisdiction over these cases . . . we hold that CAFA continues to provide jurisdiction over these individual cases notwithstanding their severance from the class.") and *Rivers v. Chalmette Medical Center, Inc.,* 805 F. Supp. 2d 291, 298 (E.D. La. August 3, 2011) (plain language of CAFA provided for district court's continued jurisdiction over all claims, even after denial of class certification).
[115] R. Doc. 20, p. 31.

proceeds pursuant to 28 U.S.C. § 1367,[116] which Plaintiffs do not dispute.[117]  As pled, Plaintiffs'

individual claims against USAA regarding its interpretation of the hit-and-run provisions of its

UM policies and failure to tender benefits will be similar to those potentially asserted by the

putative class by virtue of the class definition.[118]   Plaintiffs' argument that USAA forfeited the

right to remove Plaintiffs' individual claims because they were not removed within thirty days of

the January 8, 2019 email fails for the reasons explained previously, *i.e.*, the email did not trigger

the removal clock.

---

[116] 28 U.S.C.A. § 1367 provides:  "Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Plaintiffs' original Petition merely asserts a claim for UM benefits.  R. Doc. 1-1, p. 7.  Plaintiffs' First Supplemental and Amending Petition then asserts claims against USAA for statutory damages due to UM's alleged bad faith in failing to tender and in the handling of Plaintiffs' claim for UM benefits. R. Doc. 1-6, pp. 73-79. Plaintiffs' Third Supplemental and Amending Petition asserts the same specific claims subsequently raised in the Class Petition, *i.e.*, USAA engaged in bad faith when it misinterpreted its UM policy provisions regarding hit-and-run accidents and thus failed to pay benefits on Plaintiffs' claim.  R. Doc. 1-7, pp. 157-60. These three petitions are all subsumed in Plaintiffs' claims in the Class Petition and fall under CAFA jurisdiction. It appears that the only individualized claim asserted by Plaintiffs was raised in the Second Supplemental and Amending Petition, which asserts a claim against USAA for damages due to USAA's assertion of a lien on the settlement proceeds paid to Plaintiffs by Imperial Fire. R. Doc. 1-7, pp. 29-31.  Cursory review of the more than 2,200 pages of state court pleadings filed with the Notice of Removal indicates that this claim, despite being challenged by USAA in a motion for summary judgment filed in the state court, is still viable and is specific to Plaintiffs' settlement and not applicable to the putative class. However, this claim is related to the underlying claim for UM benefits arising from the same Accident, and as such, they form part of the same controversy.  It will serve judicial efficiency for them to be considered at the same time.

[117] *See, e.g.*, *Brown v. Mortgage Electronic Registration Systems, Inc.*, 738 F.3d 926, 933 (8th Cir. 2013) (upholding the district court's exercise of § 1367 supplemental jurisdiction over state law claims not asserted on behalf of the class but asserted along with CAFA claims).  *See also F5 Capital v. Pappas,* 856 F.3d 61, 76 (2d Cir. 2017) (affirming the district court's exercise of supplemental jurisdiction over derivative claims removed at the same time as the CAFA claims, even though the class claims were subsequently dismissed, and *citing Cedar Lodge Plantation, L.L.C. v. CSHV Fairway View I, L.L.C.,* 768 F.3d 425, 426-27, 429 (5th Cir. 2014) (CAFA jurisdiction is assessed at the time of removal, and post-removal amendments to the complaint do not defeat jurisdiction).  *Cf. Wright Transportation, Inc. v. Pilot Corp.*, 841 F.3d 1266, 1273 (11th Cir. 2016) (despite that CAFA class was not certified, retaining original CAFA jurisdiction over eight remaining state law claims that were properly pleaded as CAFA claims in the complaint, and holding that an analysis of supplemental jurisdiction was not necessary).

[118] *Williams*, 2019 WL 3526841, cited by Plaintiffs, is distinguishable.  In that case, the diverse defendant Homeland contended that the non-diverse defendant Med-Comp was improperly joined, and its citizenship should not be considered for the purposes of diversity jurisdiction under § 1332.  The court evaluated the plaintiffs' claims and held that the plaintiff class had no actionable claim against Med-Comp.  As such, the court severed and remanded the claims against Med-Comp in the context of a § 1332 diversity jurisdiction analysis which is not applicable here. *Williams,* 2019 WL 3526841, at *9.

## III.    Recommendation

**IT IS RECOMMENDED** that the Motion to Remand,[119] filed by Plaintiffs Bruce David Andrew Safranek and Darci Felder Safranek, individually, and on behalf of their minor children, be **DENIED** as the Notice of Removal was timely filed, the requirements of CAFA have been established, and none of the CAFA abstention exceptions are inapplicable.

**IT IS FURTHER RECOMMENDED** that Plaintiffs' request to sever and remand non-class claims be **DENIED**.

In the event this Recommendation is adopted, **IT IS FURTHER RECOMMENDED** that the matter be referred for a scheduling conference.

Signed in Baton Rouge, Louisiana, on February 25, 2021.



**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[119] R. Doc. 16.